# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JASON CLOWREY and NICOLA
CLOWREY,

                        Plaintiffs,

v.                                              Case No:   6:15-cv-1831-Orl-31KRS

NOREEN BROOKS,

                        Defendant.

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

      This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **CROSS-PLAINTIFFS' MOTION FOR FINAL JUDGMENT AGAINST CROSS-DEFENDANT BROOKS (Doc. No. 46)** |
| **FILED:** | **March 29, 2016** |

## I.    BACKGROUND.

      On October 29, 2015, Plaintiffs Jason Clowrey and Nicola Clowrey filed suit against Defendants Terrance Paul Donaghue ("Donaghue"), Terrence Donaghue International Enterprises, Inc. d/b/a Preserve Property Management ("PPM"), Chamberlains Real Estate International, Inc. ("Chamberlains"), and Noreen Brooks ("Brooks").   Doc. No. 1.   Plaintiffs asserted seven separate counts, each of which arose out of allegedly false representations that Brooks had the financial ability to purchase Plaintiffs' property under residential purchase and sale contracts.   *Id.*

      Donaghue, PPM, and Chamberlains filed an answer on November 19, 2015.   Doc. No. 17. They also asserted a crossclaim for fraud against Brooks.   *Id.*   Although she was personally served

with the original complaint on November 2, 2015, *see* Doc. No. 13, and the crossclaim on December 16, 2015, *see* Doc. No. 33, Brooks never appeared in this action.   Accordingly, upon applications by the parties, the Clerk entered defaults against Brooks.   Doc. Nos. 18, 19, 34, 35.

Plaintiffs subsequently moved for default judgment against Brooks on January 19, 2016. Doc. No. 37.   I denied that motion without prejudice, but I noted that Plaintiffs could file a renewed motion within fourteen days after Plaintiffs' claims against the remaining Defendants were resolved. Doc. No. 38.   Shortly thereafter, Cross-Plaintiffs requested leave to file their motion for default judgment against Brooks within fourteen days after the resolution of their claims with Plaintiffs, which request I granted.   Doc. Nos. 39, 40.

All parties except for Brooks attended mediation on March 14, 2016, and settled their disputes.   Doc. No. 45.   Consequently, on March 16, 2016, all claims and counterclaims were dismissed, except for the claims and crossclaim asserted against Brooks.   Doc. Nos. 41, 42. Plaintiffs never renewed their motion for default judgment.

On March 29, 2016, Cross-Plaintiffs filed a motion for default judgment against Brooks. Doc. No. 46.   I subsequently issued a supplemental briefing order, requiring the movants to, *inter alia*, demonstrate how the allegations of the crossclaim entitled each Cross-Plaintiff individually to a default judgment, and address whether Cross-Plaintiffs were entitled to recover fees and costs incurred in connection with their crossclaim under the wrongful-act doctrine.   Doc. No. 47.   The Cross-Plaintiffs filed their supplemental brief on May 26, 2016.   Doc. No. 48.

Brooks has not responded to Cross-Plaintiffs' motion for default judgment, and the time for her to do so has passed.   The presiding District Judge referred the motion for default judgment to me for issuance of a Report and Recommendation, and the matter is now ripe for review.

## II.      STANDARD OF REVIEW.

A court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for such entry.   *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not *well-pleaded* or to admit conclusions of law.").[1]   Therefore, in considering a motion for default judgment, a court must "examine the sufficiency of plaintiff's allegations to determine whether [the] plaintiff is entitled to" a default judgment.   *Fid. & Deposit Co. of Md. v. Williams*, 699 F. Supp. 897, 899 (N.D. Ga. 1988).

The Supreme Court has explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-has-unlawfully-harmed-me accusation.   A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   This requirement applies with equal force in the analysis of a motion for default judgment.   *De Lotta v. Dezenzo's Italian Rest., Inc.*, No. 6:08-cv-2033-Orl-22KRS, 2009 U.S. Dist. LEXIS 110538, at *2–4 (M.D. Fla. Sept. 3, 2009), *adopted by* 2009 U.S. Dist. LEXIS 110257 (M.D. Fla. Nov. 24, 2009).   Moreover, when a party alleges fraud, he "must state with particularity the circumstances constituting fraud or mistake."   Fed. R. Civ. P. 9(e).

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default.   Rather the Court determines the amount and character of the damages to be awarded."   *Miller v. Paradise of Port*

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all binding decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

*Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999).   If a default judgment is warranted, the court may hold a hearing for purposes of assessing damages.   Fed. R. Civ. P. 55(d)(2); *see also SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).   However, a hearing is not necessary if a party submits sufficient evidence to support the request for damages.   *Smyth*, 420 F.3d at 1232 n.13.

### III.     FACTUAL ALLEGATIONS.

Donaghue is the managing member of PPM and president of Chamberlains.   Doc. No. 17, at 20 ¶¶ 3–4.   On January 30, 2009, the Clowerys entered into a Management and Rental Agreement with PPM for the management and rental of their property at 174 Robin Road, Davenport, Florida 33837 (the "Property").   Doc. No. 17-1.   On or about March 1, 2013, Jason Clowrey called Donaghue, informing him that Brooks would rent the Property and instructing him to allow Brooks to enter the Property.   Doc. No. 17, at 20 ¶ 8.   Brooks occupied the Property for a period of approximately fifteen days and remitted rent to the Clowreys for that occupancy.   *Id.* at 20 ¶ 9.

In August 2013, the Clowreys informed Donaghue that they could not afford to keep the Property.   *Id.* at 21 ¶ 11.   The Clowreys then entered into an exclusive right of sale listing agreement with Chamberlains, with Donaghue listed as the authorized transactional broker.   *Id.* at 17 ¶ 12; Doc. No. 17-3.

After the Property was listed for sale, Brooks contacted Donaghue and expressed an interest in purchasing the Property in an all-cash sale. Doc. No. 17, at 21 ¶ 14.   Brooks submitted an offer for $240,000.00, which the Clowerys rejected.   *Id.* at 21 ¶ 15.   On November 15, 2013, Brooks submitted an offer of $251,000.00 in cash to purchase the Property.   *Id.* at 22 ¶ 17.   To prove that she had sufficient income and finances to purchase the Property, Brooks submitted an attestation

letter from a Virgin Islands-based petroleum company, which asserted that Brooks would soon be receiving $150,000.00 from a transaction in which she was a participant.  *Id.* at 17 ¶ 18.  The Clowreys then accepted Brooks's offer, and they entered into a sale and purchase contract.  *Id.* ¶ 19. Donaghue and Chamberlains were listed in the contract as the listing sales associate and listing broker, respectively.  Doc. No. 17-4, at 11.

In the following months, Brooks sent multiple emails to Donaghue indicating that she would receive the necessary cash from various business transactions to close on the purchase contract, and she attached documentation attesting to her anticipated income, including a letter that was purportedly from a New York attorney.  *Id.* at 22–23 ¶ 20.  Brooks was aware that her representations concerning her ability to purchase the Property were false when made, and the documentation produced by Brooks to Donaghue was false or otherwise illegitimate.  *Id.* at 24 ¶¶ 25, 30.  Brooks intended to induce reliance by the Clowreys, Donaghue, PPM, and Chamberlains on her representations that she could both purchase the Property for cash and pay the Clowreys rent for her occupancy.  *Id.* at 24 ¶ 26.

In reliance on Brooks's representations, the Clowreys and Brooks entered into additional contracts and an extension addendum, which were also all-cash closings.  *Id.* at 23 ¶ 21; Doc. No. 17-5.[2]  Donaghue and Chamberlains were again identified as the listing sales associate and listing broker, respectively, in the January 2015 contract.  Doc. No. 17-5, at 16.  As a result of Brooks's representations and the documents she submitted, Donaghue believed Brooks's representations that she had the financial ability to purchase the Property for cash.  Doc. No. 17, at 23 ¶ 22.  Donaghue, PPM, and Chamberlains relied on Brooks's representations in submitting

---

[2]  In this document, Brooks agreed to deliver to the title company on or before the closing date outstanding rent due.  In turn, the Clowerys agreed to clear outstanding debts owed to PPM and others.  Doc. No. 17-5, at 15, 17.

Brooks's various offers to purchase the Property to the Clowreys.  *Id.* at 23 ¶ 28.  Brooks's representations were material to the Clowreys' decisions to enter into subsequent contracts with Brooks, which included additional consideration for past-due rent.  *Id.* at 24 ¶ 29.  Based on Brooks's representations, which were communicated through Donaghue, the Clowreys also allowed Brooks to remain on the Property until closing, at which time they would both sell the Property and recoup unpaid rent.  *Id.* at 23 ¶ 23.

Brooks ultimately never deposited any funds with the closing agent, and the closing was never consummated.  *Id.* at 23 ¶ 24.  Brooks moved out of the Property in May 2015.  *Id.* at 23 ¶ 24.  As a result of Brooks's actions, Cross-Plaintiffs were forced to incur attorneys' fees and costs in defending against the action brought by the Clowreys.  *Id.* at 24–25 ¶ 32.

## IV.   DISCUSSION.

In this Report and Recommendation, I will address two issues.   First, I will analyze whether Cross-Plaintiffs are entitled to default judgment against Brooks.   Second, I will assess whether Plaintiffs' claims against Brooks should be dismissed for failure to prosecute.

A.   *Whether Default Judgment Should Be Entered Against Brooks.*

1.   Liability.

Cross-Plaintiffs seek the entry of default judgment against Brooks on their state law fraud claims.   The elements of a fraud claim under Florida law are

> (1) a false statement of fact, (2) known by the person making the statement to be false at the time it was made, (3) made for the purpose of inducing another to act in reliance thereon, (4) action by the other person in reliance on the correctness of the statement, and (5) resulting damage to the other person.

*Kelly v. Nelson, Mullins, Riley & Scarborough, L.L.P.*, No. 8:01-cv-1176-T-27MAP, 2002 U.S. Dist. LEXIS 6430, at *20 (M.D. Fla. Mar. 20, 2002) (citing *Gandy v. Trans World Comput. Tech.*

*Grp.*, 787 So. 2d 116 (Fla. 2d Dist. Ct. App. 2001)).   Moreover, the pleading requirements of

Federal Rule of Civil Procedure 9(b) for a fraud claim are satisfied if the complaint sets forth

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)) (internal quotation marks omitted).

Here, Cross-Plaintiffs allege that Brooks made false statements concerning her financial ability to purchase the Property for cash and supported those statements with false documents. Doc. No. 17, at 24 ¶ 25.   Such documents included an attestation letter asserting that she would soon be receiving $150,000.00 and a January 17, 2014 letter purportedly from a New York attorney indicating that funds sufficient to close on the purchase of the property were forthcoming.  *Id.* at 22–23 ¶¶ 18, 20.   Brooks was aware at the time she made those representations that she did not, in fact, have the financial ability to close on the purchase of the Property.  *Id.* at 24 ¶ 30. Nevertheless, she made the representations to induce the Cross-Plaintiffs' reliance when she submitted her offers to purchase the Property to the Clowreys and represented that she could pay rent for her occupancy of the Property.  *Id.* at 24 ¶¶ 26–28.   Those representations were, in fact, material to the Cross-Plaintiffs' decisions to submit Brooks's offers to the Clowreys and, ultimately, to the Clowreys' decisions to enter into contracts with Brooks, including subsequent agreements with additional consideration for past-due rent.[3]  *Id.* at 24 ¶¶ 28–30.   Brooks's actions — and

---

[3] While the allegations specific to PPM are sparse, PPM — as a property manager and through Donaghue — was responsible for maintaining the Property, including paying all bills pertaining to the Property on behalf of the Clowreys, except mortgages, taxes, insurance, utilities and association dues, subject to reimbursement of those payments by the Clowreys. Doc. No. 17-1.   Pursuant to PPM's management

Cross-Plaintiffs' reliance thereon — damaged the Cross-Plaintiffs, including by forcing them to defend against the claims brought by the Clowreys in the instant action.   *Id.* at 24–25 ¶¶ 31–33.

The foregoing allegations, which were admitted by virtue of Brooks's default, are sufficient to establish that Brooks committed fraud.

### 2.   Damages.

In support of their damages request, Cross-Plaintiffs have submitted the affidavit of Nancy E. Brandt, Esq., their counsel of record.   Doc. No. 46-1.   Attorney Brandt states that Cross-Plaintiffs incurred $9,000.00 in damages by virtue of their settlement with the Clowreys in this case.   *Id.* ¶¶ 19–20.   This amount is recoverable.

Cross-Plaintiffs also seek attorneys' fees and costs under the wrongful-act doctrine, as part of their damages request.   Doc. No. 46, at 6–7.   Under that doctrine,

> where "the wrongful act of the defendant has involved the claimant in litigation with others, and has placed the claimant in such relation with others as makes it necessary to incur expenses to protect its interests, such costs and expenses, including reasonable attorney's fees upon appropriate proof, may be recovered as an element of damages."

*Schwartz v. Bloch*, 88 So. 3d 1068, 1071 (Fla. 4th Dist. Ct. App. 2012) (quoting *Martha A. Gottfried, Inc. v. Amster*, 511 So. 2d 595, 598 (Fla. 4th Dist. Ct. App. 2010)).   "The wrongful act doctrine . . . only applies to the costs of litigation with third parties, not subsequent litigation with the defendants who committed the wrongful act."   *Johnson Law Grp. v. Elimadebt USA, LLC*, No. 09-cv-81331-MARRA/JOHNSON, 2010 U.S. Dist. LEXIS 51079, at *23–24 (S.D. Fla. May 24, 2010).   Upon review of the pertinent filings, I conclude that the wrongful-act doctrine applies

---

responsibilities, Donaghue permitted Brooks to enter the Property at the direction of the Clowreys during her initial March 2013 occupancy.   Doc. No. 17, at 20 ¶ 8.   Additionally, a contract entered into for the purchase of the Property provides a reasonable inference that the Clowreys intended to pay money they owed to PPM from the proceeds of the sale of the Property, because those funds would be shown on the HUD Closing Statement for the sale of the Property.   Doc. No. 17-5, at 15.   Based on these allegations, I recommend that the Court find that PPM suffered damages based on its reliance on the false representations made by Brooks.

in this case.   The allegations of the complaint establish that Brooks's misrepresentations led to the instant action being filed by the Clowreys against Cross-Plaintiffs.

*a.      Attorneys' fees.*

Attorney Brandt originally averred that the Cross-Plaintiffs incurred $18,016.50 in attorneys' fees.   Doc. No. 46-1 ¶¶ 18, 20.   However, after I issued a supplemental briefing order requiring Cross-Plaintiffs to address whether the wrongful-act doctrine entitled them to recover for fees and costs incurred in pursuit of their crossclaim, Cross-Plaintiffs revised their damages request. Specifically, they acknowledged that the various entries related to the pursuit of their crossclaim should be removed, and they reduced the sum sought to $16,324.00.   Doc. No. 48, at 5.

Attorney Brandt has provided time sheets concerning work performed by herself, Brett Norvig, Esq., and Legal Assistant Sheila Webb.   Doc. No. 46-1, at 6-9.   Attorney Brandt graduated from the University of Florida College of Law in 1995, has been a partner with Bogin, Munns & Munns, P.A. since 2005, and has an AV preeminent rating from Martindale Hubbell.   *Id.* at 2 ¶¶ 3– 4.   Brett Norvig is an associate who graduated from the University of Miami School of Law in 2007 and was admitted to practice in Florida that same year.   *Id.* at 3 ¶ 9.   Sheila Webb has worked as a legal assistant in central Florida for more than 30 years, and she was previously a judicial assistant in the Ninth Judicial Circuit.   *Id.* at 2-3 ¶ 8.

Cross-Plaintiffs were billed at rates of $285.00 per hour for work performed by Attorneys Brandt and Norvig, and $125.00 per hour for work performed by Ms. Webb.   *Id.* at 9.   Attorney Brandt opines that the above rates are reasonable in light of the experience and skill of the respective timekeepers.   *Id.* at 4 ¶ 16.   In the absence of any objection, I recommend that the Court find that the requested hourly rates are reasonable in this market.   *See Grasso v. Grasso*, No. 8:13-cv-3186- T-33AEP, 2015 U.S. Dist. LEXIS 117125, at *4 n.3 (M.D. Fla. Sept. 2, 2015) ("[A]ttorney's fees

sought as damages under the doctrine must be reasonable."); *see also Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (observing that the court is itself an expert on fees).

Cross-Plaintiffs originally claimed fees for 58.9 hours worked by Attorney Brandt, 3.0 hours worked by Attorney Norvig, and 3.0 hours worked by Ms. Webb.   Doc. No. 46-1, at 9.   Cross-Plaintiffs submitted time sheets in support of the above-claimed hours, and Attorney Brandt represented that she has removed time attributable to work related to PPM's counterclaim.   *Id.* at 3–4, 6–9.   In a supplemental brief, Cross-Plaintiffs subsequently indicated that an additional 5.5 hours of attorney time and 1.0 hour of legal assistant time should be deducted for work performed on the crossclaim.   Doc. No. 48, at 5.   However, a review of the time sheets submitted by Cross-Plaintiffs indicates that 6.5 hours of attorney time have been noted as pertaining to the crossclaim. *See id.* at 7–10 (noting deductions for entries on November 19, 2015, November 23, 2015, November 30, 2015, December 10, 2015, December 17, 2015, January 7, 2016, January 19, 2016, January 20, 2016, January 26, 2016, and March 15, 2016, which total 6.5 hours of attorney time and 1.0 hour of legal assistant time).   Accordingly, after review of the time entries and in the absence of objection, I recommend that the Court award fees for 52.4 hours of work performed by Attorney Brandt, 3.0 hours of work performed by Attorney Norvig, and 2.0 hours of work performed by Legal Assistant Webb.   *Cf. Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (noting that objections and proof from fee opponents must be specific and reasonably precise).

In light of the foregoing, I recommend that Cross-Plaintiffs be awarded attorneys' fees as part of its damages award, as follows:

| Professional | Hourly Rate | Reasonable Hours | Total |
|---|---|---|---|
| Nancy E. Brandt, Esq. | $285.00 | 52.4 | $14,934.00 |
| Brett M. Norvig, Esq. | $285.00 | 3.0 | $855.00 |
| Sheila J. Webb | $125.00 | 2.0 | $250.00 |
| **TOTAL** | | | $16,039.00 |

*b.    Costs.*

Cross-Plaintiffs also seek $3,266.05 in costs as part of their damages award.   Doc. No. 46, at 3.   This request consists of $3,145.00 in mediator fees and $121.05 in service-of-process fees. Doc. No. 46-1 ¶ 18.   The cost of Court-ordered mediation is recoverable by Cross-Plaintiffs under the wrongful-act doctrine.   However, the cost for service of their crossclaim on Brooks is not recoverable under that doctrine.   *Cf. Johnson Law Grp.*, 2010 U.S. Dist. LEXIS 51079, at *23–24 ("The wrongful act doctrine only applies to the costs of litigation with third parties, not subsequent litigation with the defendants who committed the wrongful act.").

While Cross-Plaintiffs observe that service-of-process fees are taxable costs, *see* Doc. No. 48, at 4, that fact is a fundamentally distinct issue from the one presently before the Court — i.e., what costs are recoverable as part of the *damages* award.   To the extent that Cross-Plaintiffs seek an award of taxable costs in connection with the pursuit of their own crossclaim, they should do so by filing a bill of costs as required by Federal Rule of Civil Procedure 54(d)(1).

Therefore, I recommend that Cross-Plaintiffs be awarded an additional $3,145.00 as damages under the wrongful-act doctrine.   In total, Cross-Plaintiffs should be awarded $28,184.00 in damages.

B.      *Whether Plaintiffs' Claims Against Brooks Should Be Dismissed for Failure to Prosecute.*

Under Local Rule 1.07(b),

When service of process has been effected but no appearance or response is made within the time and manner provided by Rule 12, Fed. R. Civ. P., the party effecting service shall promptly apply to the Clerk for entry of a default pursuant to Rule 55(a), Fed. R. Civ. P., and shall then proceed without delay to apply for a judgment pursuant to Rule 55(b), Fed. R. Civ. P., failing which the case shall be subject to dismissal sixty (60) days after such service without notice and without prejudice; provided, however, such time may be extended by order of the Court on reasonable application with good cause shown.

On January 20, 2016, I extended the deadline for Plaintiffs to file a motion for default judgment against Brooks until fourteen days after their claims against all other defendants were resolved. Doc. No. 38.   On March 15, 2016, all parties who appeared stipulated to dismissal of all claims and crossclaims, except those asserted against Brooks.   Doc. No. 41.   The Court entered an order memorializing that stipulation on March 16, 2016.   Doc. No. 42.

Plaintiffs have not moved for a default judgment against Brooks, and the deadline for them to do so has passed.   Accordingly, I recommend that the Court dismiss without prejudice Plaintiffs' claims against Brooks, pursuant to Local Rule 1.07(b).

## V.      RECOMMENDATIONS.

In light of the foregoing, I respectfully **RECOMMEND** that the Court do the following:

1.      **DISMISS without prejudice** Plaintiffs' claims against Noreen Brooks;

2.      **GRANT in part** Cross-Plaintiffs' Motion for Final Judgment Against Cross-Defendant Brooks (Doc. No. 46);

3.      **FIND** that Noreen Brooks is liable to Terrance Paul Donaghue, Terrance Donaghue International Enterprises, Inc., and Chamberlains Real Estate International, Inc. for fraud;

4.      **ASSESS** $28,184.00 in damages against Noreen Brooks; and

5.      **DIRECT** the Clerk of Court to issue a judgment consistent with the Court's ruling

on this Report and Recommendation and, thereafter, to close the file.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on June 20, 2016.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE